IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| DAVID L. KAMP, | |
|---|---|
| Petitioner, | No. 9:18-cv-00943-JKS |
| vs. | MEMORANDUM DECISION |
| RAYMOND SHANLEY, Superintendent, Coxsackie Correctional Facility, | |
| Respondent. | |

David L. Kamp, a New York state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Kamp is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Coxsackie Correctional Facility. Respondent has answered the Petition, and Kamp has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 11, 2013, Kamp was charged with 6 counts of third-degree criminal sexual act in an indictment that alleged that Kamp licked his stepdaughter's vagina on six separate occasions over the course of July through September 2012 when the complainant was 16 years old. Prior to trial, Kamp filed an omnibus motion seeking various forms on relief, including the preclusion of any evidence of prior bad acts or other crimes. The People informed the trial court that it did not intend to introduce prior bad acts or other crimes, and the court precluded the People from introducing such evidence. The People subsequently filed a motion seeking to introduce evidence that Kamp had inappropriately touched the complainant while applying

medical ointment to a skin rash, which they alleged was necessary "to provide the necessary background information concerning the relationship between [Kamp] and the victim and to explain a victim's failure to disclose ongoing sexual abuse." After hearing argument on the motion, the trial court granted the application.

At trial, the complainant testified that, in April 2012, her mother took her to a dermatologist who prescribed a cream for rashes that had developed on the complainant's body. Although she testified that she could apply the rash herself, two or three times a week Kamp would take the complainant into the bedroom he shared with her mother and check her entire body for the rash, touching her breasts. She further testified that between July and September, Kamp started touching and licking her vagina. In mid-September, the complainant told one of her teachers. The complainant then spoke with her school's guidance counselor, Police Investigator Mike Ten Eyck, and Sarah Purdy, a child protective services caseworker.

Sura Page, a licensed clinical worker, also testified for the prosecution about Child Sexual Abuse Accommodation Syndrome, which attempts to explain the pattern of behavior exhibited by child victims of sex abuse. Officer Ten Eyck further testified that, after speaking with the complainant, he and Purdy met with Kamp at his home, during which time Ten Eyck secretly recorded Kamp. The interview, in which Kamp denied sexually abusing the complainant but admitted that he licked his fingers and touched her vagina with his wet fingers, was played for the jury.

Two of Kamp's friends testified on his behalf that they knew the complainant and that her demeanor had seemed fine during the time period at issue. Kamp's mother and biological son and daughter also testified on his behalf. Kamp also testified on his own behalf. According

to Kamp, when the complainant developed a rash that she could not reach or see, she would ask Kamp to apply the cream for her, including for one rash that was either right on or near her vagina. Kamp testified that the complainant had no issues showing him her vagina. He denied sexually abusing the complainant and believed that his ex-wife wanted him out of the house because she was seeing a man who moved into the marital home after Kamp's arrest.

At the conclusion of trial, the jury found Kamp guilty as charged. The trial court sentenced him to six consecutive prison terms of 3 years, followed by 10 years of post-release supervision, for an aggregate imprisonment term of 18 years.

Through counsel, Kamp appealed his conviction, arguing that: 1) the admission of uncharged crimes deprived him of due process and the right to a fair trial; 2) the trial court erred in denying his request to adjourn sentencing after Kamp retained new counsel; 3) his sentence was harsh and excessive; and 4) the verdict was against the weight of the evidence. The Appellate Division of the New York Supreme Court unanimously affirmed Kamp's conviction and sentence in a reasoned opinion issued on June 18, 2015. *People v. Kamp*, 14 N.Y.S.3d 163, 166 (N.Y. App. Div. 2015). Kamp sought leave to appeal to the New York Court of Appeals his uncharged crimes and failure to adjourn sentencing claims, which was denied without comment on September 24, 2015. *People v. Kamp*, 40 N.E.3d 583, 583 (N.Y. 2015).

Kamp then filed a counseled motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. In that motion, Kamp claimed that: 1) there was newly-discovered evidence that the recording of his interview had been redacted and "did not represent the actual event as it occurred in its entirety;" and 2) trial counsel was ineffective for failing to authenticate the recording. The superior court denied the motion in a reasoned,

3

unpublished opinion concluding that there was no evidence that the authenticity of the recording was in question and that the "anomalies" alleged in the forensic expert's report offered in support of the motion were not "borne out by the trial record, and even if accepted as true" did not establish a "reasonable possibility" of a different outcome at trial. The Appellate Division granted leave to appeal but ultimately affirmed the denial in a unanimous, reasoned opinion opinion issued on May 17, 2018.[1] *People v. Kamp*, 77 N.Y.S.3d 572, 573-74 (N.Y. App. Div. 2018). The appellate court agreed that "the forensic report is merely impeachment evidence to attack the trial testimony of the investigator who testified as to the authenticity of the record," and the failure to investigate the authenticity of the record did not constitute ineffective assistance. *Id.* at 573. Kamp sought leave to appeal the denial, which was summarily denied on July 23, 2018. *People v. Kamp*, 108 N.E.3d 505, 505 (N.Y. 2018).

Again proceeding through counsel, Kamp timely filed the instant Petition for a Writ of Habeas Corpus to this Court on August 9, 2018. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his counseled Petition before this Court, Kamp argues that: 1) the post-conviction review court's adjudication without a hearing of his ineffective assistance claim was contrary to, or based on an unreasonable application of, clearly-established federal constitutional authority;

---

[1] While the appeal of his post-conviction relief application was pending in the Appellate Division, Kamp filed a habeas petition in this Court which another judge dismissed without prejudice for failure to exhaust state court remedies. *See* Docket No. 2, Case No. 9:18-cv-00395-TJM-DEP. Because the dismissal of the initial habeas proceedings was without prejudice to Kamp's re-filing once his state court proceedings were completed, the instant Petition does not constitute a second or successive petition and is properly before this Court.

4

2) the admission of uncharged crimes deprived him of due process and the right to a fair trial; and 3) the trial court constitutionally erred in denying Kamp's request to adjourn sentencing after he retained new counsel.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

5

correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed

to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

**Ground 1**.   *Ineffective Assistance of Counsel/Dismissal of Post-Conviction Claim*

Kamp first argues that the post-conviction review court contravened or unreasonably applied clearly-established federal authority when it denied without a hearing his claim that trial counsel was ineffective for failing to authenticate the recording of his interview. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Kamp must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

7

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New

8

York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Kamp's ineffective assistance claim must fail, however, even under the more favorable New York standard. The Appellate Division rejected the claim on § 440 review as follows:

> [Kamp] . . . argues that he received ineffective assistance because his trial counsel failed to investigate whether the audio recording of his interrogation was authentic and failed to object to its admission into evidence. In particular, [Kamp] asserts that the People's case hinged upon this evidence. Contrary to this assertion, however, the People introduced testimony from the victim about [Kamp's] inappropriate acts, which was further corroborated by other witnesses. Almost all of these witnesses were thoroughly cross-examined and, as [Kamp] recognizes, he did not fully admit to the alleged wrongdoing during his interrogation.
> In view of the foregoing, we cannot say that the failure to investigate the authenticity of the audio recording or to object to its admission constituted ineffective assistance. Moreover, given that [Kamp's] trial counsel gave opening and closing statements, made pretrial motions, vigorously cross-examined the People's witnesses and offered proof on [Kamp's] behalf, the trial record and written submissions fail to disclose that [Kamp] was deprived of meaningful representation. Accordingly, County Court properly denied [Kamp's] motion without a hearing.

*Kamp*, 77 N.Y.S.3d at 573-74 (citations omitted).

The Appellate Division's conclusion is both reasonable and fully supported by the record. Although it is not clear from the appellate decision which of the two prongs the appellate court rested its decision, an independent review of the record supports that trial counsel's performance was neither deficient, nor did Kamp suffer prejudice from it. The appellate court's reasoning does not run contrary to *Strickland* or any other federal authority.

Similarly meritless is Kamp's argument that the state courts unreasonably applied federal authority when it denied the claim without holding an evidentiary hearing. Notably, in arguing that the New York courts were required to hold an evidentiary hearing when adjudicating this claim, Kamp cites only decisions involving federal convictions and federal prisoners and *not*

9

§ 2254 decisions, which, as discussed above, employ much narrower and deferential standards of review. Kamp also cites New York state law in support. But under New York's Criminal Procedure Law, state courts may deny a CPL § 440.10 motion on the merits without a hearing if "[t]he moving papers do not allege any ground constituting legal basis for the motion." CPL § 440.30(4)(a). "Whether or not to hold a hearing on a motion to vacate judgment upon the ground of newly discovered evidence is discretionary with the court to which the motion is addressed." *People v. Crimmins*, 343 N.E.2d 719 (N.Y. Ct. App. 1975), *overruled on other grounds by People v. Jones*, 26 N.E.3d 754 (N.Y. Ct. App. 2014) (citations omitted). A hearing is not required "where the court is able to reach its conclusion on the papers alone," because to do so "would serve no end of justice but would only protract futile litigation." *Id.* (citations omitted). In this case, the state court reached a determination on the papers alone, which "was proper under New York State law, and did not did not violate clearly established Supreme Court precedent or Federal law." *Rustici v. Philips*, 497 F. Supp. 2d 452, 469 (E.D.N.Y. 2007), *aff'd sub nom. Rustici v. Phillips*, 308 F. App'x 467 (2d Cir. 2009).

Kamp alternatively requests an evidentiary hearing in this Court. "A district court has broad discretion to hear further evidence in habeas cases." *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999). "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could

enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). The Supreme Court, however, made clear in *Pinholster* that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *see* § 2254(e)(2), AEDPA requires that, in addition to showing diligence in state court, a petitioner must allege a colorable claim for relief in order to obtain an evidentiary hearing, *see Schriro v. Landrigan*, 550 U.S. 465, 474-45 (2007). As discussed above, Kamp has failed to assert a colorable claim for relief as the ineffective assistance claim he raised in his § 440.10 motion. Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts, he also has failed to satisfy his burden of proof under 28 U.S.C. § 2254. Kamp is therefore not entitled to habeas relief or an evidentiary hearing on this ground.

**Ground 2.** *Admission of Uncharged Crime*

Kamp next avers that the trial court erred in admitting the uncharged crime evidence surrounding the complainant's rash, which the prosecution argued constituted evidence of Kamp's grooming of the victim. The trial court ruled that evidence that Kamp touched the complainant's breasts and vagina under the guise of "checking" her rash was relevant to prove Kamp's intent "regarding any contact with the alleged victim's private parts," and that, because

11

the court would give a limiting instruction, the probative value of the evidence outweighed its potential prejudice. On direct appeal, the Appellate Division agreed that the evidence was "relevant for the nonpropensity purpose of providing 'necessary background information on the nature of the relationship between [Kamp] and the victim, . . . plac[ing] the charged conduct in context'" and that, "given the court's limiting instructions and the particular relevance of the evidence in contextualizing the victim's delayed reporting of [Kamp's] alleged abuse, the court did not abuse in finding that the prejudicial effect of the evidence did not outweigh its probative effect." *Kamp*, 14 N.Y.S.3d at 165 (citations omitted).

Kamp fares no better on federal habeas review. Under New York law, evidence of prior crimes or bad acts may be admitted for the purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common scheme or plan, or (5) identity, as long as its probative value outweighs the prejudicial effect. *People v. Molineux*, 61 N.E. 286, 293 (N.Y. 1901) (setting out the rule that evidence of prior bad acts cannot be used to prove that the defendant has a propensity to commit such acts, but may be used for other purposes).[2] This evidence is also admissible to serve as background information or to complete the narrative of the events. *See People v. Dennis*, 937 N.Y.S.2d 496, 498 (N.Y. App. Div. 2012).

To the extent that Kamp contends that the trial court's ruling was contrary to *Molineux*, such claim presents solely an issue of state law that is not cognizable on federal habeas review. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12,

---

[2] *Cf.* FED. R. EVID. 404(b) ((1)" Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation").

In any event, even if it were cognizable on federal habeas review, Kamp would not be entitled to relief on it. The record reflects that the trial court considered whether the probative value of the evidence outweighed its potential prejudice, and concluded that it did. The trial court also provided a limiting instruction to ensure that the jury would properly evaluate the testimony and not consider it for propensity purposes. The Appellate Division's determination that the trial "court did not abuse its discretion in finding that the prejudicial effect of the evidence did not outweigh its probative value" is both reasonable and fully supported by the record. Accordingly, the rejection of Kamp's claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority, and he is not entitled to relief on this claim.

**Ground 3.** *Denial of Adjournment Request*

Finally, Kamp claims that the trial court erred in denying his request to adjourn sentencing after he retained new counsel and that the denial violated his right to counsel of his choice. The record reflects that, two days prior to sentencing, Kamp's newly-retained attorney requested that sentencing be adjourned. The prosecutor opposed the request, arguing that the

untimely request would be "unfair as well as psychologically damaging to the victim," and the trial court denied it. On direct appeal, the Appellate Division concluded that Kamp failed to preserve his claim regarding the denied adjournment because he did not raise before the trial court any claim that the denial violated his right to counsel of his choice. *Kamp*, 14 N.Y.S.3d at 166.

As an initial matter, Respondent correctly argues that Kamp's claim is procedurally barred from federal habeas review as well. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding the prosecutorial conduct claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York Criminal Procedure Law ("CPL") § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As the record supports that defense counsel did not raise this particular contention before the trail court, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and his claim must be denied on that basis.

Moreover, Kamp is not entitled to relief on the merits either. The matter of allowing delays falls within the discretion of the trial judge. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "Trial judges necessarily require a great deal of latitude in scheduling trials" due to the problems associated with assembling witnesses, lawyers and jurors. *Morris v. Slappy*, 461 U.S. 1, 11

(1983); *United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir. 1999). In evaluating decisions denying such requests, reviewing courts must pay particular attention to the reasons presented to the trial judge in support of the request. *Ungar*, 376 U.S. at 589. In this case, Kamp was sentenced more than two months after his conviction. He did not explain in his request why sentencing needed to be adjourned, and the record reflects that, after the request was denied, counsel made valid arguments as to why Kamp should be leniently sentenced. Accordingly, Kamp fails to show that he was prejudiced by the denial and ultimately fails to show that the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly-established federal law.

## V. CONCLUSION

Kamp is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 18, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge